## Sugar Valley Lumbering Co. *versus* Phineas M. Barber *et al.*

1. A block survey, where all the surveys were owned by *one owner*, was returned to contain thirty-nine tracts, but with room for only thirty-six *whole* tracts. In the block, two of the tracts and a part of a third had no land, but where the loss should fall was uncertain under the evidence. The court below held, that in the absence of evidence to indicate a better rule, the preference should be given to the older survey. *Held*, reversing the court below, that this was error, and that a better rule to govern the determination of the question was that of *actual location*, as ascertained by calls from other tracts of the same block of surveys, which are fixed by established marks and monuments on the ground of said tracts.

2. Per AGNEW, C. J. The rule of dates laid down in the court below is not applicable. In a block survey, where the owner of the block owns all the surveys, which are bounded by paper lines, and he sells in no legal order of succession, it is plain the date rule is without meaning; possibly there may be a case where it must be resorted to in a block of surveys; but its true place is in separate surveys for different owners, where priority of survey necessarily gives title.

June 6th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of *Lycoming county:* Of May Term 1877, No. 106.

Ejectment by the Sugar Valley Lumbering Company against Phineas M. Barber and others.

The plaintiffs in this action sought to recover possession of a tract of land surveyed upon a warrant dated April 12th 1794, granted in the name of John Wester, which was one of thirty-nine warrants, all of the same date, surveyed in one block, from the 9th to the 16th of December 1794. These warrants were all granted upon the application of Jeremiah Parker, and the block, when surveyed and returned, belonged to him. The plaintiffs showed title to the tract in dispute by a regular chain of conveyances from the warrantee, and it was not controverted that the title to the John Wester tract was vested in the plaintiffs.

The defendants claimed title to a tract in the warrantee name of Jacob Kriter, one of the same block of surveys, under a sale made by the treasurer of Lycoming county, on June 15th 1852, of 290 acres, part of this tract, for the unpaid taxes for the years 1850 and 1851, to George W. Youngman, under whose title thus derived they claimed to hold the premises in dispute. The tract in the name of

Jacob Kriter, according to official return, contained 400 acres, and there was no evidence tending to show what part of it was assessed and sold by the treasurer to George W. Youngman. The writ alleged that the defendants were in possession of the whole of the tract in the name of John Wester. The defendants pleaded "not guilty," and thus made defence against the whole of plaintiff's claim, alleging that the Jacob Kriter tract occupied the position in the block claimed for John Wester. They did not pretend to deny the title of the plaintiffs to the tract in the name of John Wester, but contended that the territory claimed for John Wester was in fact occupied by the tract in the name of Jacob Kriter.

In the general charge, the court, inter alia, said:

"The defendants have shown a legal title vested in them for the tract of land in the name of Jacob Kriter, and so far as the court understands it there is no dispute in reference to the legal title of either of the parties for those two tracts of land. The defendants are entitled to the tract of land in the name of Jacob Kriter; and the plaintiffs are entitled by their legal title to the tract of land in the name of John Wester. * * * The exterior lines which constitute the survey of the block are well marked with numerous marks standing upon the ground, counting the date of the survey, so that the block itself is well located and limited by exterior boundaries; but, in consequence of the mistake made by the surveyor, of one mile of distance upon the northern line of the block, there is not room enough to locate all the different tracts within those boundaries. And the question is, who must give way? Who has the best right to the particular locality described in this action of ejectment? * * * Now it appears from the evidence that they have never claimed any other tracts than the two in the names of the John Triteman and Jacob Kriter, situate in the same tier, running east and west from the John Brady, in which the disputed territory is situated, and that they have lumbered upon both of those tracts, as they claim them to be located, for a number of years, and they are not shifting their claim. They are not making a new claim now in this defence, or a different claim than that they have set up for a number of years past. I think one witness stated that for eight or ten years they had been lumbering on those two tracts as they claim them to be located.

"Then there is no difficulty or misunderstanding about the fact that the identical piece of ground that the defendants are in possession of, and have been in possession of and occupying as owners for some time past—some years back—is the identical piece of ground that is now in controversy. * * * As the court before remarked, the first thing to which we will call your attention is the calls of the survey. The survey in the name of John Wester calls for the two Pitlong surveys on the west; for Henry Linkton on the north; for Joseph Wester on the south, and for

Jacob Kriter on the east. These calls are applicable to this locality that is now in controversy upon three sides. We have the Pitlongs on the west; we have the Joseph Wester on the south; we have the Henry Linkton on the north. If Jacob Kriter is not properly located east of the John Wester, then that call would have to be disregarded. Otherwise these calls are all answered by locating the John Wester where the plaintiffs claim to locate him. The Jacob Kriter calls for the John Wester on the west, John Linkton on the north, David Kriter on the south and John Triteman on the east. By placing the Jacob Kriter tract upon the territory in dispute you will be obliged to sacrifice at least two of those calls. You would sacrifice the call for the John Wester and the call for Jacob Kriter. The John Triteman might perhaps remain, and, I believe, as the defendants explain it, they would let the John Linkton remain. I am not very positive about that. But you would sacrifice at least two of the calls of the Jacob Kriter. Now, so far as the calls of the surveys, according to their return for each other, and for the surrounding surveys, that is about the way these two tracts would be affected by this location. * * * Now, the defendants' theory is, that, commencing at the John Brady tract, and running westward along the block of surveys that run up to the John Brady, either tract, Jacob Kriter is found in the fifth tier from the John Brady. That adopting the method that the courts have recognised as the true method of ascertaining the locality of a survey, commencing at the John Brady, and following that block westward, the true location of the John Kriter is found in the fifth survey from the John Brady, including the John Brady, and as the court understands it, that would bring them upon the territory now in dispute. Now, that is a mode recognised by the law for determining the true location of any tract of land which constitutes a part of a block. The plaintiffs say—they do not gainsay that—but they say it is not conclusive; that there are other rules that are as imperative and as conclusive as the method adopted by the defendants. They claim that where the location of any one of the tracts constituting a block is established by marks upon the ground, that they can commence at that point, and locate their survey from that point with as much propriety as to commence at the leading warrant, and they give to it more potency and force, by insisting that in this particular case the James Linkton survey is located permanently by the black oak corner, that is confirmed by the surveyors, and established beyond controversy, as locating and forming the corner of the James Linkton survey. They also claim, that at the southern end of that tier, the survey in the name of James Wester is established by its call for the Martin Wester, Martin Wester being permanently fixed by the chestnut oak that is found on the ground, and the James Wester, calling for the Martin Wester, is thus

established, and that thus, by establishing the surveys at each end of this tier, they thereby establish all the intermediate surveys. They have presented very strong authority for that, the opinion of the Supreme Court, as delivered by Judge THOMPSON, who does express that opinion. Ordinarily, we would feel bound by the opinion of the Supreme Court, and feel constrained upon this authority to rule this case accordingly. But that opinion was expressed in a case somewhat differing from this. This case having features differing from that, and that being an expression of the court of an opinion that was, perhaps, not necessarily involved in that case, and an opinion that, if I am permitted to say, I have not found any authority to sustain, I feel inclined, in this instance, not to be bound by it. I give you the theory, and I say to you that it is entitled to weight, because it is one of the recognised theories by which the locality of a tract may be ascertained. Having fixed the locality of the James Linkton survey, you proceed southward, and the surveys adjoining, calling one for the other, you establish the locality by calls. As I remarked to you at the outset, if there was any living monument upon the territory in dispute, counting to the date of the survey, that would be incontestable evidence of its true locality. But when you have to resort to calls, they are not incontestable. They are evidence— evidence entitled to weight and consideration—but when they conflict—when, by pursuing that method, you are unable to come to any conclusion, from the fact that if you commence locating at one side of the survey, and locate according to calls, the result is one thing, and if you commence at the other side of the survey and locate by calls, the result is a different thing. You see that this system, this theory, is not conclusive. While it is entitled to weight and to the highest consideration, this very case proves that it cannot be conclusive, because you arrive at different results, just depending upon where you commence. Well, when the Supreme Court says that it settles it beyond a dispute, how can it settle this controversy? Adopting that theory, and commencing at the John Brady tract, and you establish the Kriter just where the defendants claim. Beginning at the James Linkton and adopting that theory, you establish it where the plaintiffs claim it—both following the theory that the Supreme Court says is conclusive. Now, while these different theories are entitled to consideration, and we must observe them in endeavoring to locate this tract, yet, when we follow them out, and by following them out result in a contradictory conclusion, we must conclude that they are not incontestable, that they are not wholly reliable. Now, in the contest in which that expression was made by the Supreme Court, I observe that the two surveys bore the same date precisely—stood upon a perfect equality as to date of surveys. Whether or not that had any influence upon the Supreme Court I know not, or whether the

[Sugar Valley Lumbering Co. *v.* Barber.]

expression made by Judge THOMPSON was maturely reflected upon I know not. It may possibly be that I am wholly in error, and that it is the rule that should govern this case, but I confess that I cannot so see it, and do not feel at present inclined to be bound by it. * * * These surveys were made at different dates. I should have remarked, however, in that same connection, according to the return of survey, the territory in controversy is in the fifth tier, counting from the Brady, and according to the measurement on the ground, that would bring it up to the Pitlong surveys, leaving no ground for John Wester. If Jacob Kriter was located upon that spot; if that is the territory upon which the surveyor located the Jacob Kriter, then, in that event, there is no territory upon which the John Wester could be located. If, on the other hand, that was the territory upon which John Wester was located by the surveyor, then his return of survey is not accurate, according to the actual measurement upon the ground. * * * If you commence at the northeast, and give to the John Wester his calls, you locate him upon the territory in dispute. If you commence at the leading warrant, the John Brady, and locate the Jacob Kriter according to his calls, you locate him upon the disputed territory. Then, if you can arrive at no satisfactory conclusion from adopting either of these theories, what next should you consider? Why, if you are satisfied, from the evidence in the cause, that the surveyor included this territory in the Jacob Kriter tract, and so returned it according to the actual measurement as ascertained on the ground, and that survey was made on the 11th of December—five days previous to any survey—having been returned as made for John Wester, the court thinks it gives priority and preference to the older survey. Now, that conclusion, is based upon the theory that these two surveys claim the same, the identical territory, and that, according to actual measurement, it is ascertained the surveyor has returned the Jacob Kriter as located upon the territory in dispute. If so, his survey preceding that of John Wester five days, the court thinks gives him a priority of right, and that he is entitled to the territory described in his warrant and return of survey. Now this is a difficult case, and one that I am by no means certain we are adjusting correctly. But, take everything into consideration, the difficulty that we have in locating these surveys from any known rules of locating surveys, and after having exhausted every method that I am aware of for locating them, and not being able to arrive at any definite result, it seems to me that the priority of survey then should preponderate in the scale, and give the title to the defendants."

The plaintiffs' points, with the answers thereto, were as follows:

1. That upon the whole evidence the plaintiffs are entitled to recover.

Ans. "We decline to give you such instruction as is asked for."

[Sugar Valley Lumbering Co. *v.* Barber.]

3. In this case the shape of the block will be most nearly preserved and a less number of calls be disregarded by locating the surveys according to the official return, and connection from the western side of the block to the eastern end of the Charles Gaylington, and making the necessary correction east of the eastern corner of the Charles Gaylington.

Ans. " That point we decline. We decline to give that instruction, and in further answer to that point, I would say that, if I understand this case, to correct this entire mistake three tracts will have to be dropped or lost out of the block. There is not enough territory to supply all the tracts by three, and three will have to be dropped out if we attempt to correct the entire block. Now, whether those three tracts are stricken out of one end of the survey or the other end of the survey will make no difference, so far as the court is able to perceive, in reference to the destruction of calls. You have three tracts to obliterate, and the calls of those three tracts will all be disarranged wherever you blot them out, so that if we were necessarily blotting out three tracts here it would really make no difference to the disturbance of calls, whether we blotted them out at one end of the survey or the other, because the calls of three different tracts have to be disregarded. So I say that it would make little difference at which end we blotted them out. But we are blotting out nothing. We do not, in this case, undertake to correct the mistake made by the surveyor; we are endeavoring to ascertain where to locate the Jacob Kriter and the John Wester. Those two tracts come in collision. It seems that, so far as they are concerned, they cover the same territory. The question is, which is to have the preference. If the location of either of them could be established conclusively, beyond all doubt, that would settle the question. But, where, applying all the rules of law that have been brought to our attention for the purpose of determining the true location, we are still left in doubt, then we fall back upon the fact that one survey preceded the other five days. Upon that ground we give that survey the preference, and in doing that we disturb no other tract in the block. Let that be for future consideration and to be dependent upon the merits of each case as it is presented.

4. There being no dispute about the location of the James Linkton by the black oak on the northwestern corner, nor of the James Wester, these surveys locate the intermediate tracts of the tier, and fix the John Wester where the plaintiffs claimed it to be, adjoining the John Pitlong and the Adam Pitlong.

Ans. "The facts recited in this point are evidence of the true location of the John Wester, entitled to great weight, but not conclusive, and may be counteracted by other evidence. I believe that is consistent with what the court stated, that, while we admit that the fact that the James Linkton survey was located by the black oak,

[Sugar Valley Lumbering Co. *v.* Barber.]

and its adjoiners, all calling for it, was a circumstance entitled to weight and consideration in fixing the location of the John Wester; yet it was a mere resort to calls, and was no higher evidence than the other evidence establishing it by calls, commencing at the white oak on the eastern side, neither of which is conclusive, and both of which are entitled to great weight and consideration."

5. That the territory covered by the entire block of surveys being owned by Jeremiah Parker, he had a right to sub-divide it as he pleased and to determine the application of the parts thereof to the several warrants. That, having caused the John Wester to be patented in 1795, by well-defined limits, he thereby fixed and determined the territory as applicable to that survey, and the defendants are concluded thereby.

Ans. "The answer to the fifth point is as follows: The description of the territory in the patent is identical with the return of survey, but furnishes no evidence of any other or different sub-division of the block than the official surveys. That is the only answer that I can think of giving to that point. I have been unable to see wherein the patent furnishes any evidence of the true location of this survey. It furnishes no evidence of any other sub-division of it than the original survey. It is a copy of the original survey, recites the original survey, and whatever evidence there is in the original survey of location, the same is in the patent; no more, no less."

6. There being no dispute concerning the facts of this case, nor any difference between the surveyors called by the respective parties as to the marks upon the ground, the location of the John Wester is a question to be determined by the court, whose duty it is to instruct the jury specifically how their verdict should be rendered, and there is, therefore, no question of fact to be submitted to the jury

Ans. "We answer that point as follows: It will be the duty of the jury to apply the rules of law under the direction of the court to the undisputed or ascertained facts, and render a verdict accordingly. It will be your province to apply the rules of law that the court has mentioned to this question, and render a verdict accordingly; apply the rules of law to the facts admitted or ascertained by you. I do not know that there is any dispute of facts unless it be something in reference to the cutting of timber by Eger and Porter. We know of no other dispute of facts in this case."

7. That under the uncontradicted evidence in the cause, the John Wester should be located where plaintiffs claim it should be located, adjoining the John Pitlong and Adam Pitlong on the west, and in the tier adjoining the Pitlongs, and the Wester on the east; and, therefore, the plaintiffs are entitled to recover.

Ans. "We decline to give you the instruction asked for in that point. We have already called your attention to the importance

of giving due regard to the calls of surveys, giving them due weight."

The following were among the defendants' points, with the answers thereto:

2. That if the jury find, from the evidence, that the surveys of the Jacob Kriter and John Wester cover the same land, then the verdict of the jury should be in favor of the defendants, as the Jacob Kriter is the older survey.

Ans. "Answered in the affirmative, unless the jury find other evidence in the cause, which, under the instruction of the court, should modify or change this rule of law."

3. In order to ascertain the location of the Jacob Kriter it is necessary to begin with the first or leading warrant of the block of which it is a part, and as the tract on the east of the block, in the name of John Brady, is a descriptive one, and the leading warrant, and its location unquestioned, the other surveys in the block must be located in consecutive order, as called for by the official survey; and if the jury are satisfied from the evidence that by so commencing and locating these tracts, the Jacob Kriter covers the land in dispute, their verdict must be for the defendants.

Ans. "This point recites correctly the recognised method of ascertaining the location of a tract or tracts of land constituting a block of surveys, and is entitled to great weight as evidence of the true location; but it is not always conclusive, and may be counteracted by other evidence."

4. If the jury find from the evidence that the defendants, and those under whom they claim, for some years prior to, and at the time of the commencement of this suit, were in possession of the fourth tract west from the John Brady, and in the same tier as that tract, and claimed the same under a title given in evidence by the defendants, and were not in possession of any land west of the said fourth tract from the said John Brady tract, such possession and claim of title is evidence of the location of the Jacob Kriter survey.

Ans. "Affirmed, the possession being some evidence of location."

In addition to the general charge, the court also said:

"Now in reference to this tax sale. We were asked by the defendants to instruct you that inasmuch as they had purchased this land for the non-payment of taxes, and that it was the land charged and the land that was sold, that if you believe the Jacob Kriter and John Wester tracts were located on the grounds in dispute, that their tax title was conclusive. We answered that point by saying that there was evidence of the payment of taxes on the part of the plaintiffs on the John Wester tract, and in consequence of that evidence the court declined to give the instruction asked for by the defendants' counsel. In the argument it has been suggested that, inasmuch as there is evidence of the payment of taxes on the

[Sugar Valley Lumbering Co. v. Barber.]

John Wester tract; that if the jury should be of opinion that these two tracts occupy and are located upon the same territory, and the taxes on that territory having been paid, the defendants acquired no title by virtue of this tax sale. That would be true, and the the defendants would have no title if there was positive evidence that the taxes upon this particular John Wester tract had been paid. But that evidence is not conclusive. The evidence is that there were taxes paid on a tract of land in the name of John Wester in Limestone township. I think it very probable that it was intended for this tract of land, and probably if that question ever comes to be investigated, it could be ascertained and established that it was this tract. But at present we cannot stop to inquire in this suit whether it was or not. It is not such conclusive evidence as to destroy the defendants' title under the tax sale. But it is evidence—such evidence as will induce the court to decline to give the defendants such instruction as they asked, growing out of the fact that they had purchased the land in dispute for the non-payment of taxes. * * *

"I hope you understand the case, and I will merely reiterate the rules of law that I think should govern you in rendering a verdict in this case. In the first place you will endeavor to ascertain the location of these surveys, which of them is entitled to this territory, by pursuing the method of tracing them from their calls; ascertain their location from their calls, and the first and, perhaps, the most useful method is to commence at the leading warrant. The location of that warrant is fixed, because the warrant itself calls for a permanent location, and it is fixed and irremovable. Therefore the usual mode is to commence at the leading warrant. By commencing at the leading warrant, as the court understands it, and I think you will ascertain by running your fingers along the surveys, that process would result in giving the land to the Jacob Kriter tract.

"Another method that is entitled to equal respect and consideration is, to commence at any other well-marked corner on the ground, and especially the black oak on the James Linkton, because that is well established, and pursuing the calls of the different surveys till you come down to the John Wester—that would give this tract of land to the plaintiffs—give them the territory in dispute. Thus, you see, by pursuing these methods of locating by calls you arrive at different conclusions.

"There is another consideration, that is the calls of the particular tracts. And, so far as the court remembers, the John Wester would be less disturbed than the Jacob Kriter tract would be in giving either of them the territory in dispute. The territory in dispute meets more of the calls of the John Wester than it meets of the Jacob Kriter tract. And that is a matter that you should take into consideration. But if, after you have examined and applied

6 Norris—21

these rules, you are still in doubt, and believe that the return of both surveys covers the ground in dispute, then we think the priority of survey gives the Jacob Kriter preference and entitles him to your verdict.

"I cannot think of anything else to say that would be of any service to you in this case. I feel inclined to give efficacy to this question of priority of surveys. I think we are authorized to do so by the rulings of the Supreme Court, and that we would be doing violence to the law if we did not do so; and where there is nothing in the calls that renders it out of place and improper to give to the Jacob Kriter the benefit of his priority of date, I think he is entitled to it. And, unless you are convinced by the testimony in the cause, and by the admitted testimony in reference to the lines, the boundaries that are found upon the ground, and counting from them by calls; unless you are convinced that the plaintiffs are entitled to this territory by virtue of those calls to such an extent that you cannot displace him, and that is where his survey was located, and the Jacob Kriter was not located there, then, I think, the defendants are entitled to the priority of the date. If these two surveys are located upon the same identical territory, then the Jacob Kriter, being five days earlier than the John Wester, takes preference and is entitled to the ground. If you should be of opinion, under this instruction, that the defendants are entitled to the verdict, you will render a verdict for the defendants generally. If, on the other hand, you find for the plaintiffs, you will render a verdict for the land described in the writ. With these instructions the court submits the case to you."

The verdict was for defendants, when plaintiffs took this writ, assigning for error the foregoing portions of the charge and the answers to points.

*Armstrong & Linn,* for plaintiffs in error.—The undisputed evidence in this case showed that the exterior lines of the block warrants, surveyed for Jeremiah Parker, were distinctly marked upon the ground, and that the western tier, including the Pitlong surveys, was fixed and established in its location by lines found upon three sides and on part of the fourth side. The surveys at the northern and southern extremities of the fifth tier were also well located by marks on the ground. According to the opinion of the court in Beck *v.* Zimmerman, this combination of established monuments fixed the location of John Wester in his appropriate position in the fifth tier, adjoining the Pitlongs, as indicated by the official return. But the court refused to be guided by the principles announced in that case, in a controversy concerning the location of a tract in the same tier of surveys, and adjoining John Wester on the south. Surely, when it clearly appears that two tiers of surveys in a block have been returned as occupying a space which affords room but for

one tier, and that fact is made clear and manifest by the undisputed testimony in the case, the error is to be referred to the locality in the block where it was made, and the other portion of the block, if by the marks and monuments on the ground it corresponds with the official return, should not be disturbed, nor the surveys included therein removed from their proper position as a whole or in their relation to each other.

There is no arbitrary rule requiring the location to be made from the leading warrant. True, in several cases, old and new, this court has said that in locating a body of warrants the proper mode is to begin with the leading warrant. But this, like every other general rule, is based upon some sufficient reason and yields when the reason thereof ceases, and is liable to many exceptions. There may be, and not unfrequently are found, marks upon the body of surveys, which furnish a safe and more reliable guide for location than a resort to the leading warrant, and a following of its calls.

The direction as to the preference to be given to the oldest survey is wholly impracticable. As applied to the tier of surveys in question, the leading warrant was surveyed on the 14th of December, whilst the second and fourth tracts to the west were surveyed on the 9th, the third on the 10th, the fifth on the 11th, and the sixth on the 16th. Under this ruling, therefore, the second and fourth tracts must retain their location, whilst all of them but the John Wester must take precedence over the John Brady, which, in another part of the charge, the jury are instructed is the controlling survey of the block. A like analysis applied to other tracts of the block would result in such confusion and impossibility of application, as to demonstrate this suggestion of the court, to be novel as it is impracticable.

*Henry Johnson, J. W. Maynard* and *Allen & Gamble,* for defendants in error.—The defendants located from the leading warrant, which they are justified in doing as the oldest rule, and they were in actual possession by the cutting of timber from time to time, and this possession was justified by the streams on the ground corresponding to the return of surveys.

The plaintiffs relied upon the dictum in Beck *v.* Zimmerman, and the opinion of Rockefeller, the surveyor, who testified in that and this case. The testimony of Mr. Rockefeller not being concurred in by the surveyors of the defendants, but found entirely incorrect, the dictum is not authority in this case.

The law was properly stated by the court below that if several surveys, under warrants of the same date, interfere with each other, the elder survey must prevail.

The question of the treasurer's sale being only for a part was not raised in the court below. It was admitted that the parties had title to their respective warrants, and the points raised were

as to location.   The court below so understood it, and so stated in their charge.

The ejectment was brought to oust the defendants from possession of the certain location which they claimed was covered by the Jacob Kriter survey, and they cannot be put out of possession until title to the land has been shown to be in the plaintiffs, and they have failed to do so.

The charge of the court below was merely an affirmance of the general and well-recognised rules of law, and the case was fairly submitted to the jury as a question of location, to be by them decided, under the evidence and laws as settled by this court in all the cases.

Chief Justice AGNEW delivered the opinion of the court, June 17th 1878.

The facts of this case present a plain duty—that is to follow a former decision directly on the question, in the absence of evidence to indicate a better rule.   There is nothing in this case to enable us to adopt a rule of title to govern it, different from that of *actual location* given to us by the late Justice THOMPSON, in the unreported case of Beck *v.* Zimmerman.   The case is a block survey returned to contain thirty-nine tracts, but with room for only thirty-six *whole* tracts.   In this block two tracts and a part of the third have no land, but where the loss shall fall is uncertain, under the evidence.   If the order of succession from the leading warrant must be observed, we are without evidence of this order.   If priority of sale by the owner of the block be the rule, we have no evidence of the order of sales.   If the date of survey be adopted, this would displace the James Linkton survey, which has a certain location by fixed monuments on the ground, in the northern boundary of the block.   It is one of the last three surveys made on the 16th day of December, and yet is admitted to be tied to its place by a fixed law.   Added to this, it is impossible to run the tracts consecutively from the 9th to the 16th of December without overleaping earlier surveys, disjointing the block and making inextricable confusion.   And were we to adopt dates wherever they occur in the blocks, we do not know they would correspond with the order of sales by the owner of all, and as to whom order of date is of no moment.

Having, therefore, no evidence on which a rule of title can be based, after displacement of some of the tracts, because of a lack of territory, we can do no better than to adopt the rule found in Beck *v.* Zimmerman; this is that the boundary of the tier of surveys on the western side of the block being defined by a well-marked line found upon the ground, and the black oak northwest corner of James Linkton, being found on the north line of the block, and the length of the tract on the south line of the block

[Sugar Valley Lumbering Co. v. Barber.]

from the chestnut oak being given, the western boundary of the second tier of surveys is also fixed. This being so, and the John Wester tract being one of this second tier, its location is necessarily fixed where its owners have claimed it to be, and the James Kriter survey cannot displace it. It is of no consequence, therefore, where the loss of territory may fall, the John Wester survey has a fixed location of its own. This is strengthened by another fact. The tract adjoining John Wester and called for on its south side, to wit, the Joseph Wester (the subject of the Beck v. Zimmerman suit), lies in a tier of surveys not affected by the lack of territory. This is the third tier from the south line of the block, which has its length on the ground. Now, if we plant the John Brady tract by its actual monuments, where the Thomas Jenkinson appears on the connected draft, it runs over the north side of Bernard Hinkman (in the third tier), only in a point of a triangle, leaving a location for the Bernard Hinkman, which loses only a part of its quantity. The third tier, therefore, retains its proper place, with simply a loss of a part of the land in one of its tracts, but still extending to the diagonal tier on the eastern side of the block. This diagonal is one of the block lines, for it has a monument at each end and a straight line from corner to corner constitutes the boundary. Thus the second tier of surveys from the west being fixed by actual monuments, and the third tier from the south being likewise so fixed, the John Wester in the second tier from the west, and in the fourth tier from the south is fastened to its place by the first tier on the west and third from the south, so that it cannot be removed. Joseph Wester, its southern boundary in the third southern tier, is fixed also by the verdict and judgment in Beck v. Zimmerman.

Hence the rule of dates laid down in the court below is not applicable. In a block survey where the owner of the block owns all the surveys, which are bounded by paper lines, and he sells in no legal order of succession, it is plain the date rule is without meaning. Possibly, there may be a case where it must be resorted to in a block of surveys, but its true place is in separate surveys for different owners, where priority of survey necessarily gives title. According to the facts before us and the former decisions the court below erred.

Judgment, reversed and a *venire facias de novo* awarded.